STATE OF MAINE                                      SUPERIOR COURT
ANDROSCOGGIN, ss.                                   CIVIL ACTION
                                                    DOCKET NO. AP-22-04

DANIEL WOOD,

          Petitioner

v.                                         DECISION AND ORDER

MAINE DEPARTMENT OF INLAND
FISHERIES AND WILDLIFE,

          Respondent

The matter before the court is petitioner Daniel Wood's appeal of a decision by the

Commissioner of the Maine Department of Inland Fisheries and Wildlife (the "Commissioner")

suspending his hunting and guide licenses, pursuant 5 M.R.S. § 11001-11007 and M.R. Civ. P.

80C.

Background

On January 6, 2022, Mr. Wood was convicted of Reckless Conduct, Class D, pursuant to

17-A M.R.S. § 221. (R. 14.) The conviction was based on Mr. Wood's conduct on November 22,

2018, when he shot and killed a deer that was within 100 yards of a residence from the side of

No Name Road in Lewiston, Maine. (R. 6, 19-20.) Mr. Wood pleaded to the charge, but the

Information and the judgment and commitment that Mr. Wood pleaded to did not contain any

reference to hunting.

Based on his conviction for Reckless Conduct, the Commissioner notified Mr. Wood on

January 25, 2022, that his hunting license was being suspended for 3 years, starting on January 6,

2022. (R. 1-2.) 12 M.R.S. § 10902(4)(A) provides that "[i]f a person holding a license or permit

under this chapter is convicted of the violation of any provision of Title 17-A while on a hunting

1

or fishing trip or in the pursuit of wild animals, wild birds or fish, the commissioner shall revoke the license or permit held by that person for a period of at least one year. . . ." § 10902(1) further enables the Commissioner to exercise their discretion to impose a longer suspension. The Commissioner based 1 year of this revocation on the mandatory revocation imposed by § 10902(4)(A) and added an additional 2-year discretionary revocation period. (R. 1-2.) On the same date, the Commissioner notified Mr. Wood that his guide license would be revoked for 1 year, starting on January 25, 2022. (R. 4.)

Mr. Wood timely filed an administrative appeal of both revocations on February 21, 2022. (R. 37.) The Department held a hearing on the matter on April 27, 2022. (R. 38.) The Commissioner reviewed the hearing record and issued a written decision on May 27, 2022, upholding the suspension decisions. (R. 40-41.) Mr. Wood subsequently appealed to the Superior Court pursuant to 5 M.R.S. § 11001-11007 and M.R. Civ. P. 80C.

Standard

In Rule 80C appeals, the reviewing court "is limited to determining whether the [agency] correctly applied the law and whether its fact findings are supported by competent evidence." *McPherson Timberlands v. Unemployment Ins. Comm'n,* 1998 ME 177, ¶ 6, 714 A.2d 818. "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Examiners of Psychologists,* 2000 ME 206, ¶ 9, 762 A.2d 551. The burden of proof is on the claimant to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Bd. of Trustees,* 661 A.2d 1202, 1207-08 (Me. 1982). The court may not substitute its judgment for the agency's simply because the evidence could give rise to more than one result. *See Dodd v. Sec. of State,* 526 A.2d 583, 584 (Me. 1987).

2

Discussion

Mr. Wood argues on appeal, as he did before the Department, that the statute does not require a mandatory suspension based on his conviction, which did not contain any references to hunting or fishing. Further, Mr. Wood argues that if the statute were to be applied to him in spite of the particulars of his plea, it is unconstitutionally vague and overbroad. The court disagrees.

The due process clauses of the Maine and United States Constitutions require that a statute "must provide reasonable and intelligible standards to guide the future conduct of individuals and to allow the courts and enforcement officials to effectuate the legislative intent in applying these laws." *State v. Peck*, 2014 ME 74, ¶ 10, 93 A.3d 256 (quoting *Shapiro Bros. Shoe Co., Inc. v. Lewiston-Auburn Shoeworkers Protective Ass'n*, 320 A.2d 247, 253 (Me. 1974)). "A statute may be void for vagueness when people of common intelligence must guess at its meaning." *State v. Witham*, 2005 ME 79, ¶ 7, 876 A.2d 40. "In examining the sufficiency of statutory language, [o]bjective quantification, mathematical certainty, and absolute precision are not required." *Id.*

The statute's language is clear, "[i]f a person holding a license or permit under this chapter is convicted of the violation of any provision of Title 17-A while on a hunting or fishing trip or in the pursuit of wild animals, wild birds or fish, the commissioner shall revoke the license or permit held by that person for a period of at least one year. . . ." 12 M.R.S. § 10902(4)(A). The statute does not state that a person has to be convicted for a hunting or fishing related crime or that his conviction must contain references to hunting or fishing related activity to trigger a period of mandatory suspension. The statute's language is clear that whether a person violated Title 17-A and whether the violation occurred in pursuit of wild animals, birds or fish are separate findings. If the Commissioner finds that a violation of Title 17-A occurred while in

3

pursuit of wild animals, birds, or fish, she is required to suspend the person's license for at least one year. *See State v. Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011 (Maine courts look first to plain language of statutes if doing so does not produce absurd, illogical, or inconsistent results). There is nothing about the statute that would cause a person of common intelligence to be uncertain as to its meaning.

Further, it is unambiguous that the statute does apply to Mr. Wood, as he has not disputed that he was convicted of Reckless Conduct and that he was in pursuit of a deer when he engaged in that conduct. His argument that the statute does not apply to him because the information and judgment and commitment do not contain explicit references to hunting is unpersuasive in light of the plain language of the statute.

Mr. Wood also suggests that the statute unconstitutionally delegates legislative authority to the Commissioner. "[L]egislation delegating discretionary authority to an administrative agency is unconstitutional if it fails to contain standards sufficient to guide administrative action." *Uliano v. Bd. Of Envtl. Prot.*, 2009 ME 89, ¶ 15, 977 A.2d 400 (quotations omitted). Vagueness and unlawful delegation are often raised simultaneously and treated as a single inquiry. *Id.* The mandatory suspension provision provides clear standards guiding agency action.

Mr. Wood argues that even if the mandatory suspension of 1 year was appropriate, the additional 3-year concurrent suspension of his hunting license and the 1-year suspension of his guide license pursuant to the Commissioner's discretionary authority was not appropriate. Mr. Wood argues that the discretionary authority of the Commissioner to impose suspensions is void for vagueness or delegates too much authority to the Commissioner. Mr. Wood argues that the record does not reveal who made the determination that a discretionary suspension was warranted, how that decision was made, and what standards were applied in making the

4

determination. In summary, Mr. Wood argues that the process created by the Department is arbitrary and inconsistently enforced against individuals.

The Law Court has held that "in such cases in which the statutory enactment of detailed specific standards is impossible, the presence of adequate procedural safeguards to protect against an abuse of discretion by the administrators of the law[] compensates substantially for the want of precise legislative guidelines and may be taken into consideration in resolving the constitutionality of the delegation of power." *Uliano*, 2009 ME 89, ¶ 15, 977 A.2d 400 (citing *Finks v. Me. State Highway Comm'n*, 328 A.2d 791, 796 (Me. 1974)).

A person who has their license suspended under § 10902(4)(A) has the right to a hearing upon written request. 12 M.R.S. § 10905. At that hearing, the Commissioner may reduce a discretionary period of suspension if she finds that it would be in the best interests of justice to do so. § 10905(2). The phrase "in the best interests of justice" is broad, but it does guide the agency's discretion. It would not be possible for the Legislature to furnish detailed standards for every situation the Commissioner may be called upon to consider, as these cases are specific to each individual. Thus, the procedural safeguards provided by the right to a hearing before the Commissioner, and the subsequent right to appeal the Commissioner's decision to the Superior Court, protects against potential abuses of discretion. Any concern with the fact that Mr. Wood may not know who made the initial determination to suspend his license is remedied by the fact that Mr. Wood has the chance to present evidence in his defense and appeal the Commissioner's final decision to the Superior Court for review.

There is no constitutional problem with the suspension of Mr. Woods's guide license either. Pursuant to 12 M.R.S. § 10908(1)(A), the Commissioner may suspend the license of a guide who fails to meet the competency standards established by the Department by rule in

5

accordance with 12 M.R.S. § 12851. The Law Court has been clear that agency promulgation of rules like this is not an unconstitutional delegation of authority, as agency rulemaking comes with the procedural protections of the Administrative Procedure Act. *See Doane v. HHS*, 2021 ME 28, ¶ 22, 250 A.3d 1101. As for the period of the suspension, Mr. Wood's guide license suspension is subject to the same procedural safeguards and standards as his hunting license suspension. Neither process involves an unconstitutional delegation of authority.

Next, the court turns to the Commissioner's exercise of her discretion. There was ample evidence for the Commissioner to make the factual findings she made. Mr. Wood objects to several factual findings for a variety of reasons, but the narrative report from the game warden who originally investigated Mr. Woods's conduct, included in the administrative record, provides ample support for the findings that Mr. Wood fired his rifle within 10 feet of the roadway and within 100 feet of a residence. (R. 19-20.) That report also supports the finding that Mr. Wood parked his truck in the roadway while taking the shot and fired in the direction of a residence. (*Id.*) In light of these facts, it was not an abuse of discretion to suspend Mr. Wood's hunting license for 3 years, and his guide license for 1 year. Mr. Wood has not met his heavy burden to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff*, 661 A.2d at 1207-08. Similarly, Mr. Wood has provided no evidence to suggest the decision of the Commissioner was motivated by bias against him, as he suggests.

The entry is

> The decision of the Commissioner of the Maine Department of Inland Fisheries and Wildlife is hereby AFFIRMED.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date:   November 21, 2022

_____
Harold Stewart, II
Justice, Superior Court

7